Regina J. Hsu (State Bar No. 318820)
EARTHJUSTICE
50 California St., Suite 500
San Francisco, CA 94111
rhsu@earthjustice.org
Tel: (213) 766-1072
Fax: (415) 217-2040

Adriano L. Martinez (State Bar No. 237152)
Candice L. Youngblood (State Bar No. 328843)
EARTHJUSTICE
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
amartinez@earthjustice.org
cyoungblood@earthjustice.org
Tel: (415) 217-2000
Fax: (415) 217-2040

*Attorneys for Plaintiffs East Yard Communities for Environmental Justice, People's Collective for Environmental Justice, and Sierra Club*

(List of Counsel continued on next page)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE, PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, SIERRA CLUB, and COMMUNITIES FOR A BETTER ENVIRONMENT,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency, and MARTHA GUZMAN, in her official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*) |

Tyler Earl (State Bar No. 320771)
COMMUNITIES FOR A BETTER ENVIRONMENT
6325 Pacific Blvd.
Huntington Park, CA 90255
tyler@cbecal.org
Tel: (510) 302-0430 ext. 116

*Attorney for Communities for a Better Environment*

**INTRODUCTION**

1. Since 2000, the South Coast Air Basin has been ranked as the most ozone-polluted area in the entire nation nearly every single year. The region has failed to meet any federal ozone standard and is also in serious nonattainment for federal particulate matter standards.

2. These air quality problems persist because of the highly polluting freight and logistics industry operating in the South Coast Air Basin to support the two busiest container ports in the nation. The Ports of Los Angeles and Long Beach, combined, process more than 40 percent of all cargo imported into the United States each year.

3. In the past four decades, warehouses have proliferated throughout the region to keep up with increasing cargo volumes flowing through the ports. Since the 1980s, the number of warehouses in San Bernardino County has doubled every decade. Currently, over 1 billion square feet of distribution centers have been built in Riverside and San Bernardino.

4. This immense growth in the warehousing and logistics industry has exacerbated the air quality issues in the South Coast Air Basin. In 2019, the warehousing sector alone produced around 45 tons per day of nitrogen oxide ("NOx") emissions, nearly the same amount of NOx emissions from all stationary sources in the region.

5. Many sources integral to warehouse operations, such as trucks and cargo handling equipment, burn diesel fuel and also emit diesel particulate matter, a cancer-causing pollutant. This pollution contributes to extremely high levels of localized pollution that affect nearby communities.

6. In 2017, the South Coast Air Quality Management District adopted its 2016 Air Quality Management Plan ("2016 AQMP"). Recognizing the need to reduce pollution from warehouse facilities, the 2016 AQMP included, as part of the Air District's strategy to attain national ambient air quality standards, a facility-based mobile source control measure to reduce warehouse emissions.

7. On May 7, 2021, the South Coast Air Quality Management District adopted Rule 2305, or the Warehouse Indirect Source Rule, pursuant to the 2016 AQMP. The Rule requires large warehouse facilities to limit their environmental impacts in the region.

8. On August 13, 2021, the California Air Resources Board submitted the Warehouse

Indirect Source Rule to EPA for approval into California's State Implementation Plan ("SIP").

9. The 2022 AQMP notes that the Warehouse Indirect Source Rule will achieve between 0.7 tons per day (tpd) to 1.5 tpd of NOx reductions in 2023, in addition to achieving 1.5 tpd to 3 tpd of NOx reductions in 2031.

10. Under the federal Clean Air Act ("CAA"), EPA was required to act upon CARB's submittal of the Warehouse Indirect Source Rule by February 13, 2023 to determine if the SIP submittal complies with statutory requirements. To date, EPA has not taken final action on the SIP revision.

11. Plaintiffs EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE, PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, SIERRA CLUB, and COMMUNITIES FOR A BETTER ENVIRONMENT (collectively "Community Advocates") seek to vindicate the rights that Congress provided citizens to ensure that the Warehouse Indirect Source Rule is enforceable under federal law and that they are afforded the clean air protections and procedural rights provided by the Clean Air Act. Thus, these organizations bring this action under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*., to compel EPA to comply with its statutorily required, non-discretionary duty to review and act upon California's SIP submittal on the Warehouse Indirect Source Rule, approved by the South Coast AQMD and CARB, and submitted to EPA for approval on August 13, 2021.

**JURISDICTION AND VENUE**

12. This case arises under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 1331 and 1361. The relief requested by Plaintiffs is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201, 2202, and 1361.

13. Community Advocates provided EPA with written notice of the claims stated in this action at least sixty (60) days before commencing this action as required by 42 U.S.C. § 7604(b)(2). More than sixty (60) days have passed since the notice was served, and the violations complained of are ongoing as EPA has not taken action on CARB's submittal of the Warehouse Indirect Source Rule for inclusion in the State Implementation Plan. *See* Exhibit A (Letter from Regina Hsu, counsel

for Community Advocates, to Michael Regan, Administrator of EPA, dated June 7, 2023).

14. The declaratory and injunctive relief that Community Advocates request is authorized by 28 U.S.C. §§ 2201(a) and 2202, and 42 U.S.C. § 7604.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because (a) this district is one in which Defendant Regional Administrator Martha Guzman resides and performs official duties; (b) a substantial part of the events and omissions giving rise to this claim have occurred in this district because EPA's Region 9 Office in San Francisco, California has a substantial role in implementing the EPA duties at issue in the case; and (c) Plaintiff SIERRA CLUB resides in this judicial district.

16. Because Defendant Regional Administrator Guzman resides in San Francisco and Plaintiff SIERRA CLUB resides in Oakland, assignment to the San Francisco or Oakland Division of this Court is proper under Civil Local Rule 3-2(c) & (d).

**PARTIES**

17. Plaintiff EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE ("EYCEJ"), a non-profit corporation based in California, is an environmental health and justice organization working towards a safe and healthy environment for communities that are disproportionately suffering the negative impacts of industrial pollution. EYCEJ represents approximately 1,000 members in East Los Angeles, Southeast Los Angeles, Long Beach, Carson, and Wilmington—all areas that are within the South Coast Air Basin. Through grassroots organizing and leadership-building skills, EYCEJ prepares community members to engage in policy issues of environmental justice and air quality at the regional, statewide, and national levels. The organization's members, most of whom reside in the South Coast Air Basin covered by the South Coast AQMD, disproportionately face many of the known detrimental health consequences of air pollution associated with the freight industry. EYCEJ's members have an interest in minimizing and eliminating additional harms to their members' health.

18. Among EYCEJ's impacted members is Jamila Cervantes, who lives in Maywood, California. Mx. Cervantes has lived in the South Coast Air Basin their entire life and suffers health problems because of the poor air quality. Since childhood, they have experienced chronic nosebleeds

that they attribute to air pollution. Over time, Mx. Cervantes developed adult asthma and cannot laugh without wheezing on bad air days. They and their siblings avoid laughter on hard asthma days to avoid emergency room visits. In recent years, Mx. Cervantes has seen more and more warehouses being built in their community. They experience dizziness when they walk to the riverbed, where many warehouses are located. The air pollution impacts Mx. Cervantes' ability to recreate outdoors. They can no longer hike due to their uncontrolled asthma. The respiratory issues Mx. Cervantes developed from poor air quality have had a financial impact on their life. When they worked as an independent contractor, they had significant medical expenses and would sometimes rely on home remedies to avoid seeing a doctor.

19. Plaintiff PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE ("PC4EJ") is a non-profit organization organized and existing under the laws of the State of California. It is dedicated to building community power in the Inland Empire region of Southern California, which is part of the South Coast Air Basin, to fight against pollution and environmental racism. PC4EJ represents over 1,000 community members in the Inland Empire who are impacted by the air pollution across the region caused by freight, goods movement, and other industrial activities throughout the region. PC4EJ's members reside in the South Coast Air Basin covered by the South Coast AQMD and disproportionately face many of the known detrimental health consequences of air pollution.

20. Among PC4EJ's impacted members is Ivette Torres, who lives in Moreno Valley. Ms. Torres suffers from chronic migraines and allergy-induced asthma that she believes is caused by the persistent air pollution in the South Coast Air Basin, particularly from warehouses near her home. Ms. Torres does not have air conditioning and often opens the windows at home during extreme heat events. This aggravates her migraines during bad air quality days. Because the air pollution is often at unhealthy levels, Ms. Torres opts to exercise at an indoor gym, rather than outdoors. As warehouse pollution negatively impacts Ms. Torres and other PC4EJ members, she worked on a report with other organizational members to analyze the disproportionate impacts of warehouse pollution on environmental justice communities in the South Coast Air Basin. Their research showed that the top 10 communities in the South Coast with the highest concentration of

warehouses also fall in the highest percentile of toxic facilities and experience increased incidences of asthma and hospitalizations due to exposure to high particulate matter and ozone levels.

21. Plaintiff SIERRA CLUB, a corporation organized and existing under the laws of the State of California, is a national non-profit organization of more than 600,000 members, with more than 130,000 living in California, and a local Southern California chapter headquartered in Los Angeles County. SIERRA CLUB is dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of earth's ecosystem and resources; to educating and encouraging humanity to protect and restore the quantity of the natural and human environment; and to using all lawful means to carry out these objectives. SIERRA CLUB has been a strong and constant advocate for reducing dependence on fossil fuels to cut air pollution. Several SIERRA CLUB members and staff reside in the South Coast Air Basin covered by the South Coast AQMD and disproportionately face many of the known detrimental health consequences of air pollution.

22. Among Sierra Club's affected members is Bobbi Jo Chavarria, who has lived in Fontana, California, in San Bernardino County for the past three decades. Ms. Chavarria is very concerned about the air pollution caused by the warehouses located near her home and in her community, especially considering the increasing amount of warehouse development in the South Coast in recent years. When she and her family first purchased their home, they were surrounded by a chicken farm and open fields. Now, their home is surrounded by warehouses under construction and heavy truck service areas. Ms. Chavarria suffers from health problems that she attributes to the air pollution from warehouses and constant truck activity near her home. She developed rhinitis, which causes constant congestion and headaches. Ms. Chavarria takes daily allergy medicine for relief, even though her allergy tests have shown that she does not have any allergies. Ms. Chavarria's doctor has stated that environmental air quality can be a factor for her symptoms. Ms. Chavarria's husband has worked in a warehouse facility since 1991 and is exposed to dangerous emissions every day. He suffers from chronic allergies, coughs frequently, and has also developed diabetes, high blood pressure, and elevated cholesterol. Ms. Chavarria's younger son experiences regular nosebleeds, which they believe are caused by long-term exposure to air pollution near their home.

23. Plaintiff COMMUNITIES FOR A BETTER ENVIRONMENT ("CBE") is a non-profit health and justice organization based in California. Since 1978, CBE has been organizing residents living in frontline communities around issues of environmental, racial, and social justice. CBE has staff and hundreds of members in Los Angeles, with a large representation in frontline communities such as Southeast Los Angeles and Wilmington. Through organizing, education, and leadership development, CBE is committed to empowering communities to transform environmental conditions and improve health outcomes in low-income communities of color.

24. Among CBE's affected members is Romeo Clay, who has lived in the South Coast Air Basin his whole life. Both of the communities he has lived in, Torrance and now Wilmington, are heavily impacted by air pollution from surrounding industry and are home to countless warehouses that serve the Ports of Los Angeles and Long Beach. Mr. Clay has respiratory issues including asthma that is exacerbated and can be triggered by poor air quality. Mr. Clay must contend with the noise, smells, and emissions of diesel trucks that are constantly driving past his home to and from the warehouses in his community. Mr. Clay often bikes to get around Wilmington and encounters diesel trucks on the road almost any time he rides his bike. He worries about his health and the health of his friends whenever any of them are excessively coughing, especially since this is most common during poor air quality days. His concern led him to CBE, where he has been able to learn more about environmental pollution and now works directly with community members as a Youth Organizing Intern.

25. The violations alleged in this Complaint have injured and continue to injure the interests of Plaintiffs and their members. Granting the relief requested in this lawsuit would redress these injuries by compelling EPA to take the action mandated by law and ensure that residents of the South Coast Air Basin are afforded clean air protections and procedural rights afforded by the Clean Air Act.

26. Defendant EPA is a federal agency charged with the implementation and enforcement of the Clean Air Act.

27. Defendant MICHAEL REGAN is sued in his official capacity as the Administrator of the EPA. He is responsible for taking various actions to implement and enforce the Clean Air Act,

including the actions sought in this Complaint.

28. Defendant MARTHA GUZMAN is sued in her official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency. She is responsible for taking various actions to implement and enforce the Clean Air Act, including the actions being sought in this Complaint, in Region 9. Region 9 includes California and the South Coast Air Basin.

**STATUTORY AND LEGAL FRAMEWORK**

29. The Clean Air Act establishes a comprehensive scheme "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

30. As one of its central features, the Act requires the Administrator to set NAAQS for certain air pollutants. 42 U.S.C. § 7409(a). Under the Act, the Administrator must set "primary" standards for those pollutants at levels that will protect the public health with an adequate margin of safety, *id*. § 7409(b)(1), and "secondary" standards at levels that will "protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air." *Id*. § 7409(b)(2).

31. In 1997, EPA adopted a national ambient air quality standard on the daily maximum 8-hour average concentrations of ozone of 0.08 parts per million. 62 Fed. Reg. 38,856 (July 18, 1997) (codified at 40 C.F.R. § 50.10). EPA strengthened the 8-hour ozone standard in 2008, lowering the ambient ozone concentration to 0.075 parts per million. 73 Fed. Reg. 16,436 (Mar. 27, 2008) (codified at 40 C.F.R. § 50.15). In 2015, EPA again revised the 8-hour ozone standard to 0.070 parts per million. 80 Fed. Reg. 65,292 (Oct. 26, 2015) (codified at 40 C.F.R. § 50.19).

32. In 1997, EPA adopted national ambient air quality standards on the 24-hour maximum concentration of PM2.5 of 65 $\mu g/m^3$ and annual maximum concentration of PM2.5 of 15 $\mu g/m^3$. 62 Fed. Reg. 38,652 (July 18, 1997) (codified at 40 C.F.R. § 50.7). EPA strengthened the 24-hour PM2.5 standard in 2006 to 35 $\mu g/m^3$, and the annual PM2.5 standard to 12 $\mu g/m^3$ in 2013. 71 Fed. Reg. 61,144 (Oct. 17, 2006) (codified at 40 C.F.R. § 50.13); 78 Fed. Reg 3,086 (Jan. 15, 2013) (codified at 40 C.F.R. § 50.18).

33. The Clean Air Act directs EPA to designate areas with ambient air concentrations that exceed a national standard as “nonattainment” areas. 42 U.S.C. § 7407(d)(1).

34. Each state with a nonattainment area must adopt a state implementation plan for improving air quality in that area to meet the national standards. 42 U.S.C. §§ 7407(a), 7410(a), 7502(b), and 7511a. It is up to states to develop emissions-reducing regulations following strategies set forth in its state implementation plan to meet NAAQS, or reach “attainment.” California delegates some of its authority to local air districts to develop rules to meet national and state air quality standards.

35. No later than six months after receiving a state implementation plan, EPA “shall determine” whether it meets the agency’s minimum completeness criteria. 42 U.S.C. § 7410(k)(1)(B). If EPA makes no completeness finding before this deadline, the plan “shall … be deemed by operation of law to meet such minimum criteria” six months after the date of submittal. *Id.* Within twelve months from the completeness finding, EPA must approve or disapprove the plan, or approve in part and disapprove in part. 42 U.S.C. § 7410(k)(1)(B), (k)(2).

36. If EPA fails to take a non-discretionary action, such as acting on a submittal of a State Implementation Plan, citizens are empowered to seek a court order to compel prompt action. 42 U.S.C. § 7604(a)(2).

## FACTUAL BACKGROUND

### I. Air Pollution in the South Coast Air Basin

37. The South Coast Air Basin has been ranked among the worst in the nation for ozone pollution. Residents living in the region, particularly those who are most vulnerable to pollution, including children and persons with lung diseases, outdoor workers, and the elderly, suffer ozone-caused health impacts at higher levels compared to other regions.

38. Ozone is a colorless, odorless reactive gas comprised of three oxygen atoms. It is formed by the chemical reaction between nitrogen oxides and volatile organic compounds (“VOC”) in the presence of sunlight. 69 Fed. Reg. 23,858 (Apr. 30, 2004). NOx and VOC are emitted by many different pollution sources, including cars and trucks.

39. Ozone pollution, also referred to as smog, reacts with internal body tissues and can

trigger various health problems, including chest pain, coughing, throat irritation, and congestion. Short- and long-term exposure to ozone is known to inflame and damage the airways and aggravate respiratory illnesses. 69 Fed. Reg. 23,858 (Apr. 30, 2004). It is also associated with school absences, reduced activity and productivity, increased hospital and emergency room visits for respiratory issues, increases in symptoms associated with adverse health effects, including chest tightness, and medication usage, and increases in mortality due to non-accidental, cardio-respiratory deaths. *Id.*

40. To date, the South Coast Air Basin has failed to attain any of the ozone standards established by EPA.

41. EPA's designation of the South Coast Air Basin as an "extreme" non-attainment area for the 1997 8-hour ozone standard became effective on June 4, 2010. 40 C.F.R. § 81.305. EPA has also designated the South Coast Air Basin as an "extreme non-attainment" area for the 2008 and 2015 8-hour ozone standards.

42. The South Coast Air Basin also violates air quality standards for fine particulate matter, or particles with a diameter of 2.5 micrometers or smaller ("PM2.5"). The region is classified as a moderate nonattainment area for the 1997 PM2.5 standards, and a serious nonattainment area for the 2006 24-hour PM2.5 standard and the 2012 annual PM2.5 standard. 40 C.F.R. § 81.305.

43. Particulate matter describes a broad class of chemically and physically diverse substances existing as distinct solid or liquid particles that become suspended in the ambient air. *See* 62 Fed. Reg. 38,652, 38,653 (July 18, 1997). When these particles bypass the body's natural defenses, they can be inhaled into the lungs and even pass into the bloodstream. Fine particulate matter, or PM2.5, comes primarily from combustion activities. 71 Fed. Reg. 61,144, 61,146 (Oct. 17, 2006).

44. PM2.5 exposure can cause aggravation of respiratory and cardiovascular diseases, lung disease, asthma attacks, heart attacks, and premature death. 70 Fed. Reg. 65,984, 65,988 (Nov. 1, 2005). Individuals with heart and lung disease, the elderly, and children are most sensitive to PM2.5 exposure. *Id.*

## II. South Coast Air District's Warehouse Indirect Source Rule

45. Pollution from warehouse operations hinders the South Coast Air Basin's ability to

attain federal ozone and particulate matter standards. The warehousing and logistics industry is responsible for over half of all NOx emissions in the region. Diesel trucks and other sources operating at warehouses also contribute a significant amount of diesel particulate matter emissions.

46. Warehouse facilities are overwhelmingly sited in low-income communities and communities of color, with nearly 70 percent of warehouse-adjacent communities in the South Coast Air Basin being made up of people of color and nearly 50 percent experiencing poverty.

47. Warehouse-adjacent communities bear the greatest health risks from exposure to this pollution. Communities living within half a mile of a warehouse in the South Coast Air Basin experience asthma and heart attacks at significantly higher rates than the rest of the region because they are forced to breathe highly polluted air.

48. In March 2017, the Governing Board of the South Coast Air Quality Management District approved the 2016 Air Quality Management Plan ("2016 AQMP"), the Air District's plan to attain national ambient air quality standards. Acknowledging that increasing warehouse pollution affects the region's ability to meet attainment, the 2016 AQMP strategy included a facility-based mobile source control measure to reduce warehouse emissions. The 2016 AQMP was then approved by CARB, included into the State Implementation Plan, and approved by EPA in 2019.

49. On May 7, 2021, the South Coast Air Quality Management District adopted the Warehouse Indirect Source Rule in order to meet its statutory obligations under the Clean Air Act to attain national ambient air quality standards.

50. The Warehouse Indirect Source Rule requires regulated warehouses to meet an annual "points" obligation, which is calculated based on the number of truck visits a facility receives. Warehouse operators may earn points by selecting from a menu of 32 different compliance options to reduce emissions on- or off-site, including installing or replacing air filters in residences, schools, and hospitals, installing solar panels, onsite charging infrastructure, onsite yard equipment, and incentivizing and tracking visits of zero-emission trucks to their facility. They may also develop their own custom compliance plan.

51. By requiring warehouse facilities to reduce emissions, the Warehouse Indirect Source will bring significant public health benefits to the South Coast Air Basin. From 2022 to 2031, the

Rule is estimated to result in 150 to 300 fewer deaths, 2,500 to 5,800 fewer asthma attacks, and 9,000 to 20,000 fewer work days missed due to air pollution.

**III. EPA's Non-discretionary Duty to Act upon California's SIP submittal to include the South Coast Air Quality Management District's Warehouse Indirect Source Rule**

52. On August 13, 2021, the California Air Resources Board submitted a revision to California's State Implementation Plan to include the Warehouse Indirect Source Rule adopted by the South Coast AQMD on May 7, 2021 to EPA.

53. EPA was required to act on the SIP revision by either rejecting, partially approving, or approving by February 13, 2023, but failed to take its legally required non-discretionary action. 42 U.S.C. § 7410(k)(2)–(3).

54. Since February 13, 2023, EPA has violated, and continues to be in violation of, its mandatory duty under CAA section 110(k)(3).

55. EPA's failure to perform its non-discretionary duty injures Community Advocates and their members who advocated for a strong Warehouse Indirect Source Rule in order to obtain relief from warehouse pollution. EPA's delay deprives Community Advocates of the ability to seek enforcement of the Warehouse Indirect Source Rule as part of California's State Implementation Plan and receive the pollution protections promised under the Clean Air Act.

**CLAIM FOR RELIEF**

**EPA's Failure to Act on a Submitted State Implementation Plan**

56. Plaintiffs hereby incorporate all previous paragraphs by reference.

57. EPA was obligated to act on California's submittal of the Warehouse Indirect Source Rule no later than February 13, 2023. 42 U.S.C. § 7410(k)(2).

58. EPA has taken no action to approve or disapprove California's SIP amendment related to the South Coast Air District's Warehouse Indirect Source Rule submitted on August 13, 2021.

59. Accordingly, EPA has been in continuous violation of 42 U.S.C. § 7410(k)(2) since February 13, 2023, when it failed to act.

60. This Clean Air Act violation constitutes a "failure of the Administrator to perform

any act or duty under this chapter which is not discretionary with the Administrator," within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). This violation is ongoing and will continue unless remedied by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to grant the following relief:

1. DECLARE that Defendants are in violation of the Act for failing to act on California's SIP on the South Coast AQMD's Warehouse Indirect Source Rule submitted on August 13, 2021;
2. ISSUE an injunction directing Defendants to take action on California's SIP on the Warehouse Indirect Source Rule, as required by law;
3. RETAIN jurisdiction over this matter until such time as Defendants have complied with its non-discretionary duties under the Clean Air Act;
4. AWARD to Plaintiffs their costs of litigation, including reasonable attorney and expert witness fees; and/or
5. GRANT such additional relief as the Court may deem just and proper.

//
//
//
//
//
//
//
//
//
//
//
//
//

Respectfully submitted,

Dated: August 29, 2023

/s/ Regina J. Hsu
Regina J. Hsu (State Bar No. 318820)
EARTHJUSTICE
50 California St., Suite 500
San Francisco, CA 94111
rhsu@earthjustice.org
Tel: (213) 766-1072
Fax: (415) 217-2040

Adriano L. Martinez (State Bar No. 237152)
Candice L. Youngblood (State Bar No. 328843)
EARTHJUSTICE
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
amartinez@earthjustice.org
cyoungblood@earthjustice.org
Tel: (415) 217-2000
Fax: (415) 217-2040

*Attorneys for Plaintiffs East Yard Communities for Environmental Justice, People's Collective for Environmental Justice, and Sierra Club*

/s/ Tyler Earl
Tyler Earl (State Bar No. 320771)
COMMUNITIES FOR A BETTER ENVIRONMENT
6325 Pacific Blvd.
Huntington Park, CA 90255
tyler@cbecal.org
Tel: (510) 302-0430 ext. 116

*Attorney for Communities for a Better Environment*